FAX 331-9267

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ANTHONY JOSEPH VONO, d/b/a SPECIALTY PROMOTIONS, Plaintiff** | } | |
| **v.** | } | **C.A. NO. 05-485 S** |
| **JAMES R. CAPALDI, individually and in his official capacity as Director, State of Rhode Island Department of Transportation, Defendant** | } | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I. Introductory Statement

Plaintiff has filed this action to challenge, on First Amendment grounds, the state defendant's requirement that plaintiff remove a sign he has on the roof of his place of business in Providence unless he changes the content of the sign to reflect an "on-premises" activity. The sign currently advertises Casey Family Services, a non-profit social service agency, which is not an enterprise conducted on the premises where the sign is located.

The state relies on Rhode Island General Laws, Section 24-10.1-7, and Rules Section IV and Section VII (c)(1) and (2) of the Rhode Island Department of Transportation (RIDOT). Because both the state law and the RIDOT rules contain the distinction between signs with "on-site" messages (permitted) and those with

"off-site" messages (prohibited) plaintiff seeks declaratory and injunctive relief from this Court in relation to those state law provisions.

The action was filed on November 21, 2005. Defendant has now moved to dismiss the complaint, under Rule 19, because plaintiff did not also bring suit against the United States. Defendant claims the federal government is not only a necessary party under Rule 19 but also an indispensable party.

## II. Background

In 1965 Congress enacted the federal "Highway Beautification Act", 23 U.S.C. Section 131. It was also known as the Ladybird Johnson Act due to the particular interest of the then "First Lady" in the subject matter. The Act was based on a determination by Congress that outdoor advertising near Interstate and primary highways should be "controlled" for the purpose of promoting public investment in highways, safety, recreational values, and the preservation of natural beauty. 23 U.S.C. Section 131(a).

Primary roadways are defined in Section 131(t) in terms of federal aid and include more than the federal interstate highway system. The Congressional scheme deferred to state and local zoning laws by allowing signs in areas zoned commercial or industrial, even if within the benchmark six hundred and sixty feet of an interstate or primary roadway, subject to agreement between the state and federal governments. Section 131(d).

In addition, the federal statute specified several types of signs that are not to be regulated by the "effective control" provision, regardless of location. Section 131(c). They include:

1) directional, official and scenic or historic landmark signs;
2) "signs, displays, and devices" advertising sale or lease of the property on which the sign is located;
3) "signs, displays or devices" advertising "activities conducted on the property on which they are located";
4) pre-existing landmark signs, or historically or artistically significant signs, and
5) "free coffee" signs.

## III. The Nature of the Federal-State Highway Regulations

The precise nature of the Congressional scheme regarding outdoor advertising near highways is key to resolving the pending motion. The defendant's cursory argument that the federal and state schemes are "intertwined" does not look deeply enough. If the federal government in fact controls and regulates the plaintiff and his sign, or mandates a certain result, then perhaps it would be a necessary party under Rule 19. But does it?

In State of Vermont v. Brinegar, 379 F. Supp. 606 (D.Vt. 1974), the state challenged the federal withholding of 10% of highway funds based on the Federal Highway Beautification Act. Although most of the opinion is devoted to the issue of just compensation for billboards that must be removed, the court did address the question of whether the federal statute impermissibly coerced states to comply with federal law, in violation of the Tenth Amendment. Id, at 606-7. The court stated that:

> With regard to any possible coercion of the state, the penalty which a noncomplying state suffers is 10% of its

> federal-aid highway funds. Although in absolute terms, this 10 % reduction may constitute a considerable sum of money under certain circumstances, when considered in relation to a state's entire allocation of federal highway aid, we cannot say that it irresistibly compels a state under threat of economic catastrophe to embrace the federal plan.

The court in the Vermont case goes on to describe the federal act as an "inducement" and not a coercive measure. Id, at 617. Reliance was placed on a 1922 Supreme Court decision which stated that "[i]f Congress enacted [the statute] with the ulterior purpose of tempting [the states] to yield, that purpose may be effectively frustrated by the simple expedient of not yielding." Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 599 (1922). See also Markham Advertising Company v. State, 439 P.2d 248, 257, 73 Wash. 2d 405 (Wash. 1968), app. dism, 89 S.Ct. 553 (held: purpose of 23 U.S.C. Section 131 "is obviously to induce the states to act, not to require them to do so.") The Markham court also held that Congress had not pre-empted the field of highway billboard regulation and that the State of Washington could have its own statute on the same subject. 439 P.2d at 257.

Rhode Island enacted Title 24, Chapter 10.1, following the federal enactment, and there is no question that it was a response to, and is "intertwined" with, the federal financing scheme. The state statute, taking one of the concepts from the federal law, created an exemption for signs "advertising activities conducted on the property on which they are located." R.I. General Laws, Section 24-10.1-3(3).

RIDOT has entered into an "agreement" with the federal government and has also promulgated "Rules", including Section IV and VII which also relate to

"on-premises" and "off-premises" signs. For example, a sign which advertises both on-premises activities and off-premises activities is an "off-premises" sign. RIDOT Rules, Section VII (c).

According to RIDOT's analysis, consistent with the state statute, an "off-premises" sign can be converted to an "on-premises" sign without being physically moved or altered in any way, solely by changing the message conveyed on the sign.[1] Although the First Amendment merits of the case are not before the court in the present motion, the caselaw and commentary show that this on-site off-site distinction is problematic and that the courts can analyze each particular statute or ordinance on its own terms, regardless of whether the "concept" arose with the "Ladybird Johnson Act." Metromedia, Inc. v. San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed 2nd 800 (1981); City of Cincinnati v. Discovery Network, 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed 2d 99 (1993); John Donnelly & Sons v. Campbell, 639 F.2d 6 (1st Cir. 1980); Ackerly v. Somerville, 878 F.2d 513 (1st Cir. 1989); Ackerly v. Cambridge, 88 F.3d 33 (1st Cir. 1996). See also Lombardo v. Warner, 353 F.3d 774 (9th Cir. 2003) (criticized in "Ninth Circuit Upholds Oregon Sign Regulation That Distinguishes Among Signs Based on Their 'Onsite' or 'Offsite' Nature," 117 Harvard L. Rev. 2753 (2004); "Scylla or Charybdis: Navigating the Jurisprudence of Visual Clutter," 103 Michigan L. Rev. 1877 (2005).

## IV. The Federal Government is Neither Necessary nor Indispensable in This Case, Under Rule 19

Rule 19(a) makes a party a necessary party if:

---

[1] As alleged in the complaint, RIDOT invited plaintiff to change the subject on the sign to an "on-premise" activity, thereby converting the sign from an illegal one, and a "public nuisance", to a perfectly lawful sign. Complaint. Paragraphs 10, 11, 13, 15.

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Only if the Court were to first determine that a party is "necessary" under Rule 19(a) would it then proceed with the Rule 19(b) "indispensable" inquiry. Dismissal, under Rule 19, properly occurs only when a court concludes that a party is not only necessary but also indispensable because that party cannot be made a party.[2]

In the present case, neither Rule 19(a)(1) nor (a)(2) can be satisfied. Therefore the 19(b) inquiry is not required.

The first question, whether complete relief can be granted in the party's absence, focuses on the relief sought by the plaintiff. That relief is set forth in the actual complaint, not in a hypothetical complaint, as re-drafted for the plaintiff by RIDOT. The complaint sets forth five legal claims, all involving the state statute or the RIDOT regulations and procedures. Complaint, paragraphs 30-44. At no time does plaintiff set forth any claim that the federal statute is unconstitutional or that the *federal* government has violated plaintiff's rights under the First Amendment.

The plaintiff's request for relief, complaint, pages 9-10, specifically seeks declaratory and injunctive relief as to the state statute and regulations only. No relief is sought from the federal government. The United States would not be

[2] Since this Court could exercise jurisdiction over the United States as a party, if it were necessary, the dismissal requested by defendant is inappropriate in any event.

ordered to do anything as part of this Court's providing the *complete* relief sought by the plaintiff. RIDOT would redraft plaintiff's complaint and add a count challenging a federal statute, thus laying the groundwork for its argument that the federal government is a necessary party. That is not the complaint before the Court.

Since the federal government has not taken any action against plaintiff, or threatened to, it is not clear whether plaintiff would be able to craft a cause of action against the United States even if he wanted to. The most that can be said is that the federal government came up with the idea of highway billboard regulation. But it does not even "mandate" that idea on the states. And it has absolutely no regulatory relationship with Mr. Vono.

An analogy is useful at this point. Let us imagine the absence of any federal statute on this subject. However, the legislatures of Massachusetts and Connecticut enact billboard regulations affecting I-95 and they hope Rhode Island will do the same, in the interests of New England unity. The concept is theirs. They offer Rhode Island a financial incentive to join them, and it does so, despite the clear lack of coercion. A lawsuit like the present one results. Are Massachusetts and Connecticut necessary parties because they came up with the concept? Clearly not. The plaintiff challenges a Rhode Island requirement, regardless of the origin of the statutory concept. Only if another governmental entity is taking action against Mr. Vono would he even have standing to seek relief as to that entity.

The fact that Rhode Island has an agreement with the federal government, which may well be affected by a ruling on the constitutionality of the state law, does not create a direct claim for relief by plaintiff against the federal government. That

analysis is what Rule 19(a)(2) is about, and it is only triggered if the person alleged to be a necessary party "claims an interest relating to the subject of the action." In short, if the United States Department of Transportation were seeking to intervene under Rule 19(a)(2), then the federal-state agreement would be relevant and Rule 19(a)(2) may well point toward granting an intervention motion by United States Department of Transportation.

Contrary to the state's argument, Rule 19(a)(2)(ii) would not come into play on the theory that invalidating the state law "would still leave the Plaintiff vulnerable to enforcement of the Highway Beautification Act of 1965 by the federal government, thus rendering incomplete relief." Defendant's Memorandum, at 3. This statement is totally incorrect. There is no enforcement scheme at all, involving the federal government against private parties. Defendant can point to nothing in the federal act that even suggests direct federal enforcement against Mr. Vono.

Other courts have decided similar issues involving federal-state programs. In FHM Constructors v. Canton Housing Authority, 779 F.Supp. 677, 685 (N.D.N.Y. 1992), HUD was found to not be an indispensable party because plaintiff sought no relief as to HUD and plaintiff did not make an allegation that HUD violated any legal standard or statute. The court relied on Arthur v. Starrett City Associates, 89 F.R.D. 542, 546 (E.D.N.Y. 1981), which stated that "the mere fact that [a party] may defend on the ground that federal law or regulations either encourage or require the complained of practices does not mean that the action cannot go forward without HUD."

In Lopez v Arraras, 606 F.2d 347 (1st Cir. 1979), the Court held that HUD was a necessary party under Rule 19 because complete relief for the plaintiff could not be granted "without tying the tenants' recovery to HUD funds." Lopez, at 352. The plaintiff sought monetary damages against the original defendant and also had sought to avoid Eleventh Amendment problems by pointing to HUD's funding as the source of the remedy they sought. Thus the necessary party status of the federal agency was specifically linked, in the Court's view, to the relief requested and to Rule 19(a)(1).

In Green v. Stanton, 364 F.Supp. 123 (N.D. Ind. 1973), aff'd, 499 F.2d 155, cert. granted, vac. on other grounds, 420 U.S. 999, 95 S.Ct. 1440, 421 U.S. 983, 95 S.Ct. 1986, plaintiffs sued a state agency challenging the state's implementation of a federally funded program (AFDC). The state filed a Rule 19 motion to add the federal agency as a defendant, and that motion was denied. The Green Court, at 128, reasoned that the federal-state program was "optional with the states" but not in any way optional for the federal government. The court could order a certain result as to the state without the necessity of the federal agency as a party, against whom no relief was requested or awarded.

The touchstone is not whether the United States may be interested in the issue. Rather, as Justice Rehnquist noted in rejecting the argument that the United States was a necessary party in a dispute over fishing rights in the Columbia/Snake River system, the Court was not persuaded "that an adequate judgment is impossible without a joinder of the United States Government." Idaho, etc. v. Oregon and Washington, 444 U.S. 380, 100 S.Ct. 616, 623 (1980).

Defendant invokes Local Rule 27 of this Court in another attempt to recruit U.S.D.O.T. as a companion defendant. Defendant charges that plaintiff has not "complied" with that Rule. The problem once again is that nowhere in the complaint does plaintiff challenge the constitutionality of any Act of Congress, nor does plaintiff intend to do so. That is the predicate for invoking Local Rule 27.

What defendant would prefer to the present situation is a scenario in which federal law mandates the regulation at issue, the plaintiff chooses to name the U.S.D.O.T. as a defendant, and complete relief would have to extend to the federal government by necessity. Defendant understandably wants an ally defending the on-site off-site distinction. If defendant can fashion a third-party complaint against the federal government, under Rule 13 or Rule 14, then defendant may succeed in bringing U.S.D.O.T. into the case. Such a cause of action appears difficult to articulate, however.

Perhaps the most logical way to proceed is on the path chosen by the court in Degregorio v. O'Bannon, 86 F.R.D. 109, 120 (E.D. Pa. 1980), where the federal agency (HHS) was found not to be a necessary party in a challenge to state implementation of a federal-state program but was invited by the court to participate as an amicus. In the present case, plaintiff Vono would have no objection to such participation. Such a course of action would not transform this case into one deciding the constitutionality of an Act of Congress.[3]

Defendant relies on Central Tools, Inc. v. Mitutoyo Corp., 381 F.Supp. 2d 71, 77 (D.R.I. 2005), for the proposition that the federal government has substantial

[3] Plaintiff believes that U.S.D.O.T. is fully aware of the present case. In addition, as a courtesy to that entity and to facilitate an earlier rather than later participation as an amicus, plaintiff is providing a copy of this memorandum to the Federal Highway Administration (of U.S.D.O.T.).

interests and rights at stake in the present case. The "interest" described by the Central Tools decision was an actual retention of substantial rights in a patent. Thus a declaration of invalidity of the patent would absolutely affect the property interests of the absent party. That is a much more specific interest than the generalized "interest" that U.S.D.O.T. may have in the constitutionality of certain state law rules. The very agreement relied upon by defendant, first signed in 1972, includes a provision for renegotiation in light of modifications to governing statutes. See Agreement, Sec. V. U.S.D.O.T. may be very "interested" in the outcome of this case. But if that were the correct Rule 19 inquiry, then every amicus would become a *necessary* party, and litigation would become unmanageable by the courts.

## CONCLUSION

Defendant has not shown that either part of Rule 19(a) has been met here. As a result, since the federal government is not a necessary party, the Court need not reach whether it is indispensable under Rule 19(b). An invitation to submit an amicus brief may well be an appropriate way to solicit the views of the federal government without any direct challenge to an Act of Congress. The defendant's motion to dismiss should be denied.

Respectfully submitted,
Plaintiff
Anthony Joseph Vono
By his Attorney:

John W. Dineen, Esq. #2346
Cooperating Attorney
R.I. Affiliate, American
Civil Liberties Union
121 South Main Street
Providence, RI 02903
Tel. (401)331-3550
Fax (401)331-9267

## CERTIFICATION

I hereby certify that on the 21st day of February, 2006, I mailed a copy of the within to: **Rebecca T. Partington, Department of the Attorney General, 150 South Main Street, Providence, RI 02903; John Igliozzi, Esq., R.I. Department of Transportation, Two Capitol Hill, Providence, RI 02908; Michael W. Field, Esq., Special Assistant Attorney General, 150 South Main Street, Providence, RI 02903, and to U.S. Department of Transportation, Federal Highway Administration, Suite 547, 380 Westminster Mall, Providence, RI 02903.**

John W. Dineen