**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**Anthony Joseph Vono**
**d/b/a Specialty Promotions,**
**Plaintiff**

**v.** **C A. No. 05-485 S**

**James R. Capaldi, Individually and in**
**his official capacity as Director,**
**State of Rhode Island Department of**
**Transportation,**
**Defendant**

# ADDENDUM

# RHODE ISLAND DEPARTMENT OF TRANSPORTATION

# OUTDOOR ADVERTISING RULES AND REGULATIONS

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
RHODE ISLAND DEPARTMENT OF TRANSPORTATION
OUTDOOR ADVERTISING RULES AND REGULATIONS

## TABLE OF CONTENTS


| | | PAGE NUMBER |
|---|---|---|
| | DECLARATION OF POLICY | 1 |
| | JURISDICTION | 1 |
| SECTION I | PURPOSE | 1 |
| SECTION II | APPLICATION | 2 |
| SECTION III | DEFINITIONS | 2 |
| SECTION IV | SIGNS OUTSIDE URBAN AREAS | 7 |
| SECTION V | GENERAL REGULATIONS | 7 |
| SECTION VI | CRITERIA FOR A LEGAL CONFORMING SIGN | 8 |
| SECTION VII | LEGAL NON-CONFORMING SIGNS | 12 |
| SECTION VIII | MAINTENANCE OF NON-CONFORMING SIGNS | 13 |
| SECTION IX | ILLEGAL SIGNS | 14 |
| SECTION X | ON-PREMISE ADVERTISING SIGNS | 15 |
| SECTION XI | DIRECTIONAL, REGULATORY, WARNING AND AGRICULTURAL SIGNS | 17 |
| SECTION XII | RECLASSIFICATION OF SIGNS | 17 |
| SECTION XIII | PERMIT PROCESS | 17 |
| SECTION XIV | ADOPT-A-SPOT, ADOPT-A-HIGHWAY, AND SPONSOR-A-HIGHWAY PROGRAMS | 19 |
| SECTION XV | VEGETATION CONTROL | 19 |
| SECTION XVI | SEVERABILITY | 19 |
| SECTION XVII | EFFECTIVE DATE | 20 |
| | CERTIFICATION OF DIRECTOR OF TRANSPORTATION | 21 |
| EXHIBIT A | LIST OF CONTROLLED ROUTES | |
| EXHIBIT A1 | LIST OF INTERSTATE SYSTEMS OR HIGHWAYS BUILT TO NATIONAL SYSTEM OF INTERSTATE OR DEFENSE HIGHWAY STANDARDS | |
| EXHIBIT B | MAP OF URBAN/RURAL AREAS & PRIMARY/NHS RTES. | |
| EXHIBIT C | BONUS ACTS | |
| EXHIBIT D | APPLICABLE STATE STATUTE[S] | |

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
# RHODE ISLAND DEPARTMENT OF TRANSPORTATION
# OUTDOOR ADVERTISING
# RULES AND REGULATIONS

## DECLARATION OF POLICY

In order to prevent unreasonable distraction of operators of motor vehicles, to prevent confusion with respect to compliance with traffic lights, *signs,* signals and regulations, to promote safety, convenience, and enjoyment of travel upon highways within this State and to protect the public investment therein, to preserve and enhance the natural scenic beauty or aesthetic features of the highways and adjacent areas, and in the general welfare of the people of this State, the general assembly declared it to be the policy of this State that the erection and maintenances of outdoor advertising in areas adjacent to the rights-of-way of the interstate, *primary*, *secondary* road systems within the State shall be regulated in accordance with the terms of the RIGL 24-10.1 "et al" and the regulations promulgated by the Director of Transportation pursuant thereto and finds that all outdoor advertising which does not conform to the requirements of the RIGL and these *Rules and Regulations* is a public nuisance. Note: No new outdoor advertising structures may be erected except as provided in the state statute [RIGL 24-10.1]

## JURISDICTION

The Rhode Island Department of Transportation shall have the legal jurisdiction to enforce the Federal Law, State Law, and the *Rules and Regulations* for Outdoor Advertising upon the identified *state-ways* [See Exhibit A and Exhibit A1]. Furthermore any future routes or additions thereto, added to the highway system inventory will also come under the *Department's* jurisdiction.

## I. PURPOSE

The purpose of these *Rules and Regulations* is to control the erection and maintenance of *outdoor advertising signs* in accordance with the following Statutory and Regulatory empowerments:

- The United States Constitution
- The Rhode Island Constitution
- 23 United States Code (23 USC 131)
- 23 Code of Federal Regulations 750 (23 CFR 750)
- General Laws of Rhode Island, 1956, as amended, included but not limited to Chapter 24-10.1
- Federal-Aid Highway Act of 1958 (P.L. 85-381 the Bonus Act)
- Agreement for Carrying Out the National Policy Relative to Advertising Adjacent to the National System of Interstate and Defense Highways (1963) (Bonus Act)
- Amended Agreement for Carrying Out the National Policy Relative to Control of Advertising in Areas Adjacent to the National System of Interstate and Defense Highways and the Federal-Aid Primary System (1972) (Bonus Act)
- Highway Beautification Act of 1965, as amended (P.L. 89-285)
- Intermodal Surface Transportation Efficiency Act of 1991 (P.L. 102-240)
- National Environmental Policy Act
- National Historic Preservation Act, Section 106
- RIDOT Rules Regarding the Use of Highways, *Freeways*, Bridges and Structures
- RIDOT *Rules and Regulations* for Accommodating Utility Facilities Within Railroad Rights-of-Way

- RIDOT *Rules and Regulations* for Accommodating Utility Facilities Within *Freeway* Rights-of-Way
- RIDOT *Rules and Regulations* Relating to Highways and Outdoor Advertising
- Telecommunication Act of 1996
- Transportation Equity Act of 1998

## II. APPLICATION

These *Rules and Regulations* are applicable to all areas *visible* from the *state-way* in the State, as designated by the General Assembly. These provisions apply regardless of whether Federal funds participated in the cost of such *state-ways*. Nothing contained in these *Rules and Regulations* shall prohibit a *municipality* from establishing regulations imposing stricter limitations. Where a sign is erected with the purpose of its message being read from two or more highways, one or more of which is a controlled highway, the more stringent of applicable control requirements will apply.

## III. DEFINITIONS [All italicized terms or words throughout this document refer to definitions found in this Section]

1. *<u>Billboard</u>* means a *panel* designed to carry outdoor advertising. *Billboards* are considered to be personal property by the *Department* and all municipal governments in the State of Rhode Island.

2. *<u>Commercial or industrial activities</u>*, for the purposes of the *unzoned area* definition, mean those activities generally recognized as *commercial or industrial* by zoning authorities in this State, except that none of the following shall be considered *commercial or industrial:*
    1. Agricultural, forestry, ranching, grazing, farming, and related activities, including, but not limited to wayside fresh produce stands.
    2. Transient or temporary activities.
    3. Activities not *visible* from the *state-way*.
    4. Activities more than 300 feet from the nearest edge of the *state-way*.
    5. Railroad tracks and minor sidings
    6. Activities normally and regularly in operation less than 5 months per year.
    7. Activities conducted in a building principally used as a residence.

3. *<u>Commercial or industrial zone</u>* means areas, which were zoned industrial or commercial, under authority of the law as of September 21, 1959, and any newly developed commercial or industrial areas set forth by City or Town Planning Authorities.

4. *<u>Controlled area</u>* means:
    1. In an *urban area*, those areas adjacent to, and within 660 feet of, the edge of the *right-of-way* of the *state-way*.

2. Outside an *urban area*, those areas adjacent to the edge of the *right-of-way* of the Interstate and Federal-Aid *primary* and *secondary highway systems* and *visible* from the *state-way*.

5. *Controlled Routes* means: The Federal-aid *primary* system in existence on June 1, 1991, and any highway which is not on such a system, but which is on the National Highway System.

6. *Department* means the Department of Transportation of the State of Rhode Island.

7. *Designated Scenic Roadways* are any State Roadways that have been designated a "Rhode Island Scenic Roadway" by the Rhode Island Scenic Roadway Board, under the current Rhode Island legislation for Scenic Roadways.

8. *Directional* and *official signs and notices* include only *official signs and notices, public utility signs, service clubs and religious notices, public service signs*, agricultural *signs*, and *directional signs*.

9. *Directional Signs* means *signs* containing *directional* information about public places owned or operated by Federal, State, or Local governments or their agencies; publicly or privately owned natural phenomena, historic, agricultural, cultural, scientific, educational, and religious sites: and areas of natural scenic beauty or naturally suited for outdoor recreation, including bicycle paths, and state-owned railroad corridors deemed to be in the interest of the public.

10. *Double Panel Signs* means two [2] *signs* side by side facing the same direction no more than five [5] feet apart.

11. *Erect* means to construct, build, raise, assemble, place, affix, attach, create, paint, draw, or in any other way bring into being or establish, but it shall not include any of the foregoing activities when performed as an incident to the change of advertising message or customary maintenance or repair of a *sign* or *sign structure*.

12. *Erected* with the purpose of its message being read means any *sign* that is *visible* from the *state-way*.

13. *Freeway* means a way especially designed for through traffic over which abutters have no easement or right of light, air, or access by reason of the fact that their property abuts upon the way.

14. *Illegal sign* means a *sign erected* or *maintained* in violation of the Federal Law, State Law, State *Rules and Regulations*, local law or ordinance.

15. *Immediate vicinity* means the area bounded by the buildings, driveways and parking areas where the *sign* is located, in which the principal activity is conducted and is within 50 feet of the activity.

16. *Information center* means an area or site established and *maintained* as *safety rest areas* for the purpose of informing the public of places of interest within the state and providing such other information as the Director of Transportation may consider desirable.

17. *Interchange* means a system of interconnecting roadways in conjunction with one or more grade separations that provides for the movement of traffic between two or more roadways or highways on different levels. *Interchanges* may be of various types or a combination of types as set forth in "A Policy on Geometric Design of Highways and Streets" 1984, published by the American Association of State Highway and Transportation Officials, as may be amended, which is incorporated by reference.

18. *Interstate System* means that a portion of the national system of interstate and defense highways located within this State, or highways built to interstate or defense highway standards [See Exhibit A1], as officially designated, or as may hereafter be so designated, by the Director of Transportation, and approved pursuant to the provisions of Title 23, United States Code, Highways.

19. *Maintain* means to allow to exist, or keep in repair.

20. *Major official guide sign* means a sign with a total area of not less than 12 square feet, erected and authorized by the State or Federal Government to designate route numbers or route names, distances and directions to certain localities or municipalities.

21. *Municipality* means a city or town in the State of Rhode Island.

22. *Non-Conforming signs* [grandfathered] are those *signs* which were lawfully *erected*, but which do not comply with the provisions of subsequent State law or *rules and regulations* or which later fail to comply with State law or *rules and regulations* due to changed conditions.

23. *Official signs and notices* means *signs* and notices *erected* and *maintained* by public officers or public agencies within their territorial or zoning jurisdiction and pursuant to and in accordance with direction or authorizations contained in Federal, State, or local law for the purposes of carrying out an official duty or responsibility. Historical markers authorized by State law and *erected* by State or local government or nonprofit historical societies may be considered official *signs*.

24. *On-Premise Advertising Sign* means a *sign* at a business location advertising a business or businesses that are conducted on the property [the principal activity], or *signs* advertising the sale or lease of the real property upon which they are located, subject to the requirements of Section VII.

25. *Outdoor Advertising Sign* means advertising *signs*, displays, and devises in adjacent areas consistent with the terms of these *Rules and Regulations*, the Federal-Aid Highway Act of 1958 [P.L. 85-381], and the Highway Beautification Act of 1965, as amended [P.L. 85-381], and any and all subsequent amendments and laws. Any outdoor *sign*, device, figure, painting, drawing, message, notices, placard, poster, *billboard*, *billboard structure*, monopole *structure*, letter board, or other thing which is designed, including lighting, intended or used to advertise or inform, any part of the advertising or informative contents of which is *visible* from any place on the *state-way* or the Interstate, *Primary* or *Secondary Systems*.

26. *Panel* means a flat piece of material, usually rectangular, made to form part of a sunken or raised surface set in a frame for the sole purpose of advertising, or any other shaped surface and/or structure [i.e., Digital Display, Trivision, other type of Commercial Electronic Changeable Message Sign (CEVMS), etc.] approved by the *Department*.

27. *Permit* means a revocable certificate issuing permission by the *Department* authorizing the erection and maintenance of a *sign* at the location described thereon for a twelve [12] month period **beginning from the date of issuance.** The issuance of an outdoor advertising *permit* does not supersede municipal or other agency *sign* requirements or restrictions. Permits are not chattel.

28. *Permit Holder* means any *person* holding a valid and unrevoked outdoor advertising *permit. Permit holders* must demonstrate to the satisfaction of the *Department* that they have legal control of the real property [i.e., footprint] where the *sign* is located and legal control of the *sign.*

29. *Person* means any individual, group, corporation, limited liability company, partnership, association, any public entity, as the context may require, or combination thereof.

30. *Primary* means that portion of connected main highways, as officially designated, or as may hereafter be so designated, by the Director of Transportation, and approved by the U.S. Secretary of Transportation, pursuant to the provisions of Title 23, United States Code entitled, "Highways."

31. *Public Service signs* means *signs* located on bus stop shelters, which *sign*:

    1. Identify the donor, sponsor, or contributor of said shelters;
    2. Contain safety slogans or messages, which shall occupy not less than fifty percent [50%] of the area of the *sign*;
    3. Contain no other message;
    4. Are located on bus shelters which are authorized or approved by city, county, or State law, regulation, or ordinance, and at places approved by the city, county or State agency controlling the *state-way* involved; and must be located on a designated, active transit system.
    5. May not exceed 32 square feet in area. Not more than one *sign* on each shelter shall face in any one direction

32. *Public utility signs* means warning *signs*, informational *signs*, notices, or markers, which are customarily *erected* and *maintained* by publicly or privately owned public utilities, as essential to their operations.

33. *Replacement Costs* are based on a mixture of *signs* in each category with different components such as backbracing, aprons, scaffolds, and differing heights above ground level. The basic *structure* cost figure will thus apply whether or not the *sign* being valued has any (or all) of the above-mentioned features. Additives for such items as incandescent lighting, mercury vapor lights, quartz floodlights, unusual features, or differing heights above ground level over eleven (11) feet, should be made when appropriate and the costs are verified by the *Department's* Appraisal Unit.

34. *Right-of-Way* means the easement in or property acquired by the public through the *Department* of Transportation, for the purposes of highway construction, *safety rest areas*, landscaping or any other purpose incidental to highway travel or highway use.

35. *Rules and Regulations* means the State of Rhode Island and Providence Plantations, Rhode Island *Department* of Transportation, Outdoor Advertising *Rules and Regulations.*

36. *Safety Rest Area* means an area or site established and *maintained* within or adjacent to the *right-of-way* by or under public supervision or control, for the convenience of the traveling public. No advertising of any form will be allowed and is strictly prohibited within *Safety Rest Areas* unless previously reviewed and approved by the Director of the *Department* of Transportation.

37. *State-way*: for the purpose of this document when the term "*State-way*" appears it means the following: an interstate, a road, highway, route, traveled way, *interchange*, *primary*, Federal-aid *primary* or secondary system, designated scenic roadway and arterials [see Exhibits A and A1].

38. *Secondary Systems* means that portion of state *maintained* roads that are neither interstate nor *primary* roads.

39. *Service club and religious notices* means *signs* and notices, whose erection is authorized by law, relating to meetings of nonprofit service clubs or charitable associations, or religious services, which *signs* do not exceed 8 square feet in area.

40. *Sign* for the purpose of this document, when the term "*sign*" or "*signs*" appears it means the following: a display as a lettered board, a posted command, warning, or direction, including messages utilizing new technologies such as Trivision or equivalent technologies such as CMS, Digital LED, Video LED, Price Pack [changed by satellite or other], Lottery [changed by satellite or other], Electronic Water Art, Holographic, Projectorized, Gas Plasma, or other changeable messages as approved by the *Department* of Transportation, and if and when necessary the Federal Highway Administration, any outdoor advertising *sign*, device, figure, painting, drawing, message, notices, placard, poster, *billboard*, *billboard structure*, monopole structure, letter board, or other thing which is designed, including lighting, intended or used to advertise or inform, any part of the advertising or informative contents of which is visible from any place on the *state-way* of the Interstate or *primary* system, or *secondary system*.

41. *Structure*: means any device, engineered or not which provides support for *panels* that provide an advertising message, including but not limited to monopoles, multipoles, or any other thing used to provide support.

42. *Unzoned commercial or industrial area* means those areas not zoned by State or local law, regulation or ordinance, which are occupied by one or more industrial or *commercial activities*, other than *outdoor advertising signs*, and the lands along the *state-way* for a distance of 500 consecutive feet immediately adjacent to the activities. All measurements shall be from the outer edges of the regularly used buildings, parking lots, storage or processing areas of the activities, not from the property lines of the activities, and shall be along or parallel to the edge of pavement of the *state-way*. Measurements shall not be from the property lines of the activities unless said property lines coincide with the limits of the activities. Unzoned industrial or commercial areas shall not include land predominately used for residential purposes, or land adjacent to Interstate or *primary* highway constructed on *right-of-way*, the entire width of which was acquired subsequent to the Federal Aid Highway Act of July 1, 1956. In addition, "spot or strip zoning," will not be considered as a commercial or an industrial area.

43. *Urban Area* means an urbanized area or an urban place as designated by the Bureau of the Census having a population of five thousand or more and not within any urbanized area, which boundaries to be fixed by the Office of Statewide Planning, subject to approval by the Secretary of the U.S. Department of Transportation. Such boundaries shall be as a minimum, encompass the entire urban place designated by the Bureau of the Census. *Urbanized area* means an area so

designated by the Bureau of the Census, within boundaries to be fixed by the Office of Statewide Planning, subject to approval by the Secretary of the U.S. Department of Transportation. Such boundaries shall, as a minimum, encompass the entire *urbanized area* within the State as designated by the Bureau of the Census.

44. <u>*Visible*</u> means capable of being seen, discovered, or perceived [whether or not legible] without visual aid by a *person* of normal visual acuity.

## IV *SIGNS* OUTSIDE *URBAN AREAS*

The following *signs* shall be allowed outside *urban areas.* Outside *urban areas* means those areas outside the definition of "*Urban Area*" in "Section III – Definitions" of these *Rules and Regulations*, and depicted on "Exhibit C" attached.

**A.** *Directional* and other official *signs*.

**B.** *Signs* in areas, which were zoned commercial or industrial under authority of law as of the institution of the Bonus Act [see "Exhibit A"] on September 21, 1959. However, *signs* that are more than 660 feet from the edge of the *right-of-way*, and *erected* with the purpose of their message being read from the main-traveled way are prohibited.

**C.** *Signs* located in *unzoned commercial or industrial areas* as defined in Section III. However *signs*, which are more than 660 feet from the edge of the *right-of-way*, and *erected* with the purpose of their message being read from the main-traveled way are prohibited.

**D.** *Signs* lawfully in existence on October 22, 1965 [the institution of the Highway Beautification Act], determined by the Director of the *Department*, subject to the concurrence of the U.S. Secretary of Transportation, to be landmark *signs*, including *signs* on farm *structures* or natural surfaces, of historic or artistic significance the preservation of which would be consistent with the purposes of these regulations. There exist no landmark *signs* outside *urban areas* in the State of Rhode Island.

**E.** Any and all types of *signs* not listed above are hereby prohibited outside *urban areas*.

## V. GENERAL REGULATIONS

The following *Rules and Regulations* shall apply to all legally conforming and legally *non-conforming signs*:

**A.** *Signs* shall not be *erected* or *maintained* or altered in such a manner as to obscure or otherwise physically interfere with an official traffic *sign*, signal or device, or to obstruct or physically interfere with the driver's view of approaching, merging, or intersecting traffic.

**B.** *Signs* shall not be *erected* or *maintained* which imitate or resemble official traffic *signs*, signals or devices, or are *erected* or *maintained* upon trees or painted or drawn upon rocks or natural features, or which are structurally unsafe or in disrepair.

[5] Damage to the legal non-conforming *sign* from any cause whatsoever, except by willful acts, where the cost of repairing the damage exceeds 25% of the *replacement cost* of such legal non-conforming *sign* structure and/or where the legal non-conforming *sign* is at a minimum, 25% destroyed on the date of damage will not be replaced. Any legal non-conforming *sign* structure damaged by criminal or deliberate acts may be replaced upon a showing of the legal non-conforming *sign* owner that the legal non-conforming *sign* was so destroyed and upon prior written approval from the Director of the *Department* of Transportation.

[6] Deterioration of the legal non-conforming *sign* where the cost of repairing or maintaining the legal non-conforming *sign* structure exceeds 25% of the *replacement cost* of such legal non-conforming *sign* on the date that the *Department* determines that the legal non-conforming *sign* is obsolete.

[7] A legal non-conforming *sign* may be relocated to a legal conforming location with the prior approval of the *Department*.

**C. Standards for Normal Maintenance and Minor Repairs**

[1] Normal maintenance shall include change of message, normal upkeep, and minor repairs.

[2] Minor repairs, once determined by the *Department* that the cost will not exceed 25% of the *replacement cost* of the legal non-conforming *sign* shall be completed so as to result in the legal non-conforming *sign* being in satisfactory condition in the sole judgment of the *Department*. These repairs must be completed within ninety [90] calendar days from the date of notification to the legal non-conforming *sign* owner to repair, or the legal non-conforming *sign* or *billboard structure* will be removed as an *illegal sign*.

## IX. ILLEGAL *SIGNS*

Illegal *signs* mean a *sign erected* or *maintained* in violation of the Federal Law, and/or State Law, and/or State *Rules and Regulations*, and/or Local Law, and/or ordinances.

1. <u>A *sign* shall be classified as illegal including but not limited to the following:</u>

   [a] If *erected* in a *controlled area* where *signs* are not allowed; or

   [b] If violates size, lighting or spacing requirements; or

   [c] If fails to have a proper *permit*.

2. <u>Removal and Penalty of Illegal *Signs*</u>

   See RIGL 24-10.1

3. *Signs* advertising activities that are illegal under State, Federal or Local Laws, or State Regulations in effect at the location of such *signs* are prohibited

## X. *ON-PREMISE ADVERTISING SIGNS*

*On-Premise advertising signs* may not be required to have a permit under Section X, and may be permissible if they conform to the following rules:

[1] The *on-premise advertising sign* shall be located within 50 feet of the *immediate vicinity* of the principal activity.

[2] The *on-premise advertising sign* shall be located on the same premises as the principal activity or property advertised. Any sign that consist solely of the name of the establishment is an on-premise sign.

[3] The *on-premise advertising sign* shall have as its purpose [a] advertising of the sole and/or principal activity and/or it's products being sold and/or services rendered, or [b] advertising of the sale or lease of property on which the *on-premise advertising sign* is located, rather than the purpose of general advertising. An *on-premise advertising sign* identifying the establishments' principal and/or accessory products and/or services offered on the premises is an *on-premise advertising sign*

[4] A "For Sale" or "For Lease" advertising *sign* which advertises a product or a service located upon and related to the business of selling or leasing the land on which the advertising *sign* is located, is an *on-premise advertising sign.*

[5] If any or all portion of a *sign* advertises activity or activities not conducted on the premises, and/or products or services not part of the principal activity, it is not an on-premise *sign.*

[6] The *on-premise advertising sign* owner bears the burden of proving, by a preponderance of the evidence, that the advertised activity is conducted on the premises. The following shall be used for determining whether a *on-premise advertising sign* is located on the same premises as the activity or property advertised.

[a] The premises on which an activity is conducted is determined by physical facts rather than property lines, ownership, recorded plats and lots, etc. Generally, it is defined as the improved land occupied by the buildings or other physical uses that are necessary and customarily incident to the activity on a regular basis including such open spaces as are reasonably arranged and designed to be used in connection with such buildings or uses on a regular basis. *On-Premise advertising signs* shall be no more than 50 feet from said activity.

**<u>An *on-premise advertising sign* shall not be located on</u>:**

[1] Any land or site, which is not, used as an integral part of the principal activity. This would include, but is not limited to, land which is separated from the activity by a *state-way* or other obstruction, and not used by the activity, and/or extensive undeveloped *state-way* frontage contiguous to

the land actually used by a commercial facility, even though it might be under the same ownership.

[2] Any land or site, which is used for, or devoted to, a separate purpose unrelated to the advertised activity. For example, land adjacent to or adjoining a service station but devoted to raising of crops, residence, or farmstead uses or other commercial or industrial uses having no relationship to the service station activity would not be part of the premises of the service station, even though under the same ownership.

[3] Any land or site occupied solely by *structures* or uses which are only incidental to the principal activity, and which serve no reasonable or integral purpose related to the activity other than to attempt to qualify the land for *sign*ing purposes. Generally, these will be inexpensive facilities, such as picnic, playground, or camping areas, dog kennels, golf-driving ranges, common or private roadways or easements, walking paths, bicycle paths, fences, and *sign* maintenance sheds

**A. <u>Narrow Strips</u>**

Where the *sign* site is located at or near the end of a narrow strip contiguous to the activity, the *sign* shall not be considered part of the premises on which the activity being advertised is conducted. A narrow strip shall include any configuration of land, which is such that it cannot be put to any reasonable use related to the activity other than for *sign*ing purposes. In no event shall a *sign* site be considered part of the *replacement cost* premises on which the advertised activity is conducted if it is located upon a narrow strip of land:

[a] which is non-buildable land, such as a swampland, marshland, or other wetland, or
[b] which is a common or private roadway, or
[c] held by easement or other lesser interest than the premises where the advertised activity is located. Exception to the above would be a commercial or industrial complex / park marquee *sign*.

**B. <u>*On-Premise Advertising Signs* Located on Interstate and National Highway System</u>**

All on-premise *signs* including but not limited to those located adjacent to those roadways listed in Exhibit A1, are under the jurisdiction of the *Department* and these *Rules and Regulations*, and they must be in compliance with the provisions contained herein including the following:

[1] No *sign panels* will exceed a maximum area of 150 square feet

[2] *Signs* with new technologies will not be *erected* without the express written approval of the Director of the *Department* of Transportation

[3] Lighting will be in conformance with the provisions provided in Section VI – Criteria For A Legal Conforming *Sign*

[4] No *sign* will block the view of an official *directional sign*

[5] All *signs* must be a minimum of 50 feet from the state highway line

[6] *Signs* utilizing digital display technology are limited to a continuous 10-second motionless display

## XI. DIRECTIONAL, REGULATORY, WARNING AND AGRICULTURAL SIGNS

Directional, Regulatory and Warning *Signs* are not under the jurisdiction of these *Rules and Regulations*. The erection and maintenance of these types of *signs* will be referred to and are under the jurisdiction of the *Department*'s Traffic Engineering Section, and are in conformance with the "Manual for Uniform Traffic Control Devises" [MUTCD].

No rule or regulation of the Department of Transportation shall be enforced against any agricultural operation to prevent it from placing a seasonal directional *sign* or display on the state's right-of-way, on the condition that that *sign* or display conforms with the local zoning ordinance, and that *sign* or display is promptly removed by the agricultural operation upon the conclusion of the season for which said *sign* or display was placed, in accordance with RIGL 2-23.

## XII. RECLASSIFICATION OF *SIGNS*

The *Department* reserves the right to reclassify *signs* which are legally conforming that become legal non-conforming [and vice versa] due to revisions in the Federal Law, State Law, and/or *Rules and Regulations*, and/or change in business activity, and/or re-zoning by proper authority, and/or change in state-way configuration.

## XIII. *PERMIT* PROCESS

All *signs* lawfully *erected* [which include both conforming and *non-conforming signs*] require a *permit* and a *panel* identification number. *Permits* are issued to site-specific locations. Applicants requesting a *permit* must provide proof of legal control of the real property [footprint] and sign. *Permits* are issued under this application process will expire on December 31st in the year in which they were issued, unless sooner revoked for cause [outlined in these *Rules and Regulations*] by the *Department*. No *permits* shall be transferred or assigned to another entity without the approval of the *Department*.

### A. Requirements for a *Permit* Application

[1] A separate application for a *permit* shall be made for each separate *sign* as so defined in these *Rules and Regulations* on a form furnished by the *Department*; which application shall be signed by the applicant or the applicant's representative duly authorized in writing, to act for the applicant.

The following items shall be required for the *permit* application process:

[a] written proof of legal control through the calendar year, and/or ownership of the real property [footprint of the *sign*] upon which the *sign* is located [i.e. lease, rental agreement, deed, etc.];

[b] written proof of legal control through the calendar year and/or ownership of the *sign* [i.e. lease, rental agreement, bill of sale];

[c] written proof of insurance with language indemnifying and naming the State of Rhode Island as co-insured where applicable [if the *sign* is located on State-owned property];

[d] name and address of the present legal owner of the real property on which the *sign* is located;

[e] Assessor's Plat and Lot Number of the real property upon which the *sign* is located;

[f] name and address of the present *sign* owner.

[2] ***The *Permit* Rate Structure shall be as follows:**

| | |
|---|---|
| • **72 square foot stagnant *signs*** | **$200 per *panel*** |
| • **300 and 672 square foot stagnant *signs*** | **$450 per *panel*** |
| • **Changeable Message Sign /Mechanical [any size]** | **$1,300 per *panel*** |
| • **Changeable Message Sign /Electronic [any size] [Also Includes Any Other New Technology]** | **$2,000 per *panel*** |

*RIDOT Reserves the right to examine the above fees on an annual basis. Fee structures will be commensurate with actual costs to administer the Outdoor Advertising Program.

**NOTE:** Fees are charged on a per *panel* basis, and shall be paid in the form of a non-refundable check made payable to the "General Treasurer, State of Rhode Island." Applications for a new sign location shall have a non-refundable fee of $100. If the application is approved for a new location, the fee schedule above shall determine the cost of the *permit*.

[3] The *Department* may respond to a completed application within a reasonable time, not to exceed 60 calendar days. However if it is found that the information in the application is incomplete or incorrect, the *Department* reserves the right to suspend the 60 calendar day response time until all required information is submitted, reviewed, and found to be complete. Only at that time will the *Department* be held to the 60 calendar day response time.

B. **Revocation of *Permit*:** The *Department* of Transportation shall have the right after thirty [30] calendar days notice in writing to the *permit holder*, to revoke any *permit* granted if the *sign* fails to comply with these *Rules and Regulations*, Federal or State Laws that pertain to the governing of *signs*. If within the 30 calendar day period the *permit holder* amends the *sign* to conform to these *Rules and Regulations*, Federal or State Laws that pertain to the governing of *signs*, the revocation will be suspended. The *Department* will revoke immediately any *permit* whose *sign* message content resembles a traffic, *directional* or official guide *sign* or illegal content.

C. **Identification of *Sign*:** Every *sign erected* under these *Rules and Regulations* shall be *erected* in the exact location described on the *permit* and shall have a clearly *visible permit* number; said number to be not less than two [2] inches in height for *signs* closer than 150 feet from the nearest edge of the *right-of-way*, and four [4] inches in height for *signs* located beyond 150 feet from the nearest edge of the *right-of-way* and are to be placed on the furthest left support post, 2 ½ feet from the bottom of the *sign*; provided; however, that wherever *signs* are *erected* on a single post,

the number shall be placed on the face of the post under the *sign*. All *signs* having been issued a *permit* shall bear the clearly *visible* imprint of the *permit* number.

The *Department* will assign *panel* numbers for each sign *panel*. Each *panel* number shall be clearly *visible*, and shall not be les than two [2] inches in height for *signs* closer than 150 feet from the nearest edge of the *right-of-way*, and four [4] inches in height for *signs* located beyond 150 feet from the nearest edge of the *right-of-way* and are to be placed on the furthest left support post, 2 ½ feet from the bottom of the *sign*; provided; however, that wherever *signs* are *erected* on a single post, the number shall be placed on the face of the post under the *sign*.

**D. Appeal:**

[1] Any applicant aggrieved by a final written decision of a subordinate official of the *Department* of Transportation, may within thirty [30] calendar days after receipt of said written decision, appeal in writing to the Director of Transportation.

[2] Any applicant aggrieved by a final written decision of the Director, may within thirty [30] calendar days after receipt of said written decision, appeal to the Superior Court in Providence County by filing a complaint pursuant to the Rhode Island General Laws, 42-35-15, as amended.

## XIV. ADOPT-A-SPOTS, ADOPT-A-HIGHWAY, AND SPONSOR-A-HIGHWAY PROGRAMS

The erection of signage on *Department* owned and controlled *right-of-way* and *state-ways* is governed by several *Department* Programs. For information about these Programs, please contact:

| | | |
|---|---|---|
| **Adopt-A-Spot Program:** | **RIDOT Real Estate Section** | **(401) 222-4501** |
| **Adopt-A-Highway Program:** | **RIDOT Maintenance Division** | **(401) 222-2378** |
| **Sponsor -A - Highway Program** | **RIDOT Maintenance Division** | **(401) 222-2378** |

## XV. VEGETATION CONTROL

Vegetation Control as it relates to these *Rules and Regulations* shall fall under the jurisdiction of the *Department's* Property Management Procedures. Please contact the Property Management Unit for further instruction.

## XVI. SEVERABILITY

**A.** If any section, clause, or provision of these *Rules and Regulations* shall be held either unconstitutional or ineffective in whole or in part, to the extent that it is not unconstitutional or ineffective, it shall be valid and effective and no other section, clause or provision shall on account thereof be termed invalid or ineffective.