FAX 331-9267

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ANTHONY JOSEPH VONO,**<br>**d/b/a SPECIALTY PROMOTIONS,**<br>**Plaintiff** | }<br><br>} | |
| **v.** | } | **C.A. NO. 05-485 S** |
| **JAMES R. CAPALDI,**<br>**individually and in his official**<br>**capacity as Director, State of Rhode**<br>**Island Department of Transportation,**<br>**Defendant** | }<br><br><br>}<br>} | |

**PLAINTIFF'S MEMORANDUM**
**IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT**

## I. Introduction

This action was commenced in 2005 by Anthony Joseph Vono (Vono), a Rhode Island resident whose business includes use of an outdoor advertising sign located on the roof of his commercial location at 101 Poe Street in Providence. In July of that year the Rhode Island Department of Transportation (RIDOT) notified him that his sign was in violation of state law because it advertised "off-premises" activity, at that time the non-profit Case Family Services agency, rather than "on-premises" activity, i.e. an activity relating to the property on which the sign was located.

This action followed unsuccessful efforts to resolve the dispute. It focuses primarily on the First Amendment issues raised by the distinction between an on-

premise message and an off-premise message, as set forth in both the applicable state statute and the RIDOT regulations.

While this action was pending, RIDOT revised and renumbered its "Outdoor Advertising Rules and Regulations." The issue in this case remains. Plaintiff then filed an Amended and Supplemental Complaint. Each party has submitted a set of relevant facts and documents, which do not appear to differ in any material way concerning the resolution of this case. To put it briefly, plaintiff does not dispute that the sign-space is often used for "off-premises" messages, as defined by the State, and therefore it collides with the state statute and regulations as currently worded.

Initially RIDOT moved to dismiss this action for failure to join an indispensable or necessary party under Rule 19, namely the United States Department of Transportation (USDOT). Plaintiff and defendant briefed those issues in early 2006, with plaintiff emphasizing that he was not challenging an Act of Congress, or any federal regulation, in this case. This Court denied the motion to dismiss, after hearing and argument, although it has suggested to RIDOT that the views of the Federal Highway Administration, of the United States Department of Transportation (USDOT) would be welcomed should that agency wish to seek amicus status. The USDOT is fully aware of this case and to date has declined involvement.

## II. Background and The Nature of the Federal-State Highway Regulations

In 1965 Congress enacted the federal "Highway Beautification Act", 23 U.S.C. Section 131. It was also known as the Ladybird Johnson Act due to the

particular interest of the then “First Lady” in the subject matter. The Act was based on a determination by Congress that outdoor advertising near Interstate and primary highways should be “controlled” for the purpose of promoting public investment in highways, safety, recreational values, and the preservation of natural beauty. 23 U.S.C. Section 131(a).

Primary roadways are defined in Section 131(t) in terms of federal aid and include more than the federal interstate highway system. The Congressional scheme deferred to state and local zoning laws by allowing signs in areas zoned commercial or industrial, even if within the benchmark six hundred and sixty feet of an interstate or primary roadway, subject to agreement between the state and federal governments. Section 131(d).

In addition, the federal statute specified several types of signs that are not to be regulated by the “effective control” provision, regardless of location. Section 131(c). They include:

1) directional, official and scenic or historic landmark signs;
2) “signs, displays, and devices” advertising sale or lease of the property on which the sign is located;
3) “signs, displays or devices” advertising “activities conducted on the property on which they are located”;
4) pre-existing landmark signs, or historically or artistically significant signs, and
5) “free coffee” signs.

The precise nature of the Congressional scheme, and the federal-state relationship, regarding outdoor advertising near highways is worth noting.

In State of Vermont v. Brinegar, 379 F. Supp. 606 (D.Vt. 1974), the state challenged the federal withholding of 10% of highway funds based on the Federal Highway Beautification Act. Although most of the opinion is devoted to the issue of just compensation for billboards that must be removed, the court did address the question of whether the federal statute impermissibly coerced states to comply with federal law, in violation of the Tenth Amendment. Id, at 606-7. The court stated that:

> With regard to any possible coercion of the state, the penalty which a noncomplying state suffers is 10% of its federal-aid highway funds. Although in absolute terms, this 10 % reduction may constitute a considerable sum of money under certain circumstances, when considered in relation to a state's entire allocation of federal highway aid, we cannot say that it irresistibly compels a state under threat of economic catastrophe to embrace the federal plan.

The court in the Vermont case goes on to describe the federal act as an "inducement" and not a coercive measure. Id, at 617. Reliance was placed on a 1922 Supreme Court decision which stated that "[i]f Congress enacted [the statute] with the ulterior purpose of tempting [the states] to yield, that purpose may be effectively frustrated by the simple expedient of not yielding." Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 599 (1922). See also Markham Advertising Company v. State, 439 P.2d 248, 257, 73 Wash. 2d 405 (Wash. 1968), app. dism, 89 S.Ct. 553 (held: purpose of 23 U.S.C. Section 131 "is obviously to induce the states to act, not to require them to do so.") The Markham court also held that Congress

had not pre-empted the field of highway billboard regulation and that the State of Washington could have its own statute on the same subject. 439 P.2d at 257.

Rhode Island enacted Title 24, Chapter 10.1, following the federal enactment, and there is no question that it was a response to, and is "intertwined" with, the federal financing scheme. The state statute, taking one of the concepts from the federal law, created an exemption for signs "advertising activities conducted on the property on which they are located." R.I. General Laws, Section 24-10.1-3(3).

RIDOT has entered into an "agreement" with the federal government and has also promulgated "Rules and Regulations", including Section X which also relate to "on-premises" and "off-premises" signs. For example, a sign which advertises both on-premises activities and off-premises activities is an "off-premises" sign. RIDOT Rules, Section X (5).

According to RIDOT's analysis, consistent with the state statute, an "off-premises" sign can be converted to an "on-premises" sign without being physically moved or altered in any way, solely by changing the message conveyed on the sign.[1]

## III. FACTS NOT DISPUTED

The facts needed for resolution of this case are extremely concise and not in dispute. Plaintiff leases his sign to a variety of users. His sign is clearly visible

[1] As alleged in the complaint, RIDOT invited plaintiff to change the subject on the sign to an "on-premise" activity, thereby converting the sign from an illegal one, and a "public nuisance", to a perfectly lawful sign. Complaint. Paragraphs 10, 11, 13, 15.

from the northbound lanes of Interstate 95, just south of the juncture with Interstate 195.[2]

The key fact in the case is that defendant RIDOT itself notified plaintiff, on August 16, 2005, that his billboard space would not need to be removed if in the future he would display only "on-premises" messages.

Plaintiff attempted to convince RIDOT that his sign was both on-premises and off-premises. On September 2, 2005, RIDOT responded that it continued to view the sign as "off-premises". This approach is consistent with RIDOT's regulations, both old and new, since RIDOT takes the position that a sign that has a mixture of an on-premise message with an off-premise message is off-premise. Former Regulation, Rule VII (c) (1), (2); current Regulation X (5) (if "any or all portion of a sign" advertises off-premises activity, then the sign is not "on premises).

Plaintiff has challenged the state statute, and regulations, on a number of different constitutional grounds, and will now set forth his arguments on each. Before beginning the discussion, it is important to clarify certain terminology. The terms "on-site" and "off-site", or "on premise" and "off-premise", when used in relation to billboards, may connote to the reader the natural reaction that one is talking about the location of the sign. In fact, whether the sign is on the roof of a building, on the side of a building, on the ground near the entrance, or off in a field, is not the determining factor. It is the message that the sign is advertising that

[2] See Stipulated Facts statements, plaintiff's statement, Nos. 6, 8, 9. The ongoing renovations to the interchange of the two highways will not alter plaintiff's location or his proximity to the highway. The parties have not actually signed a joint stipulation of facts. As a result, plaintiff's July 13, 2007, submission is his Statement of Undisputed Facts for purpose of this Motion for Summary Judgment. The important point is that the parties do not dispute the material facts.

determines its status as on-site versus off-site. See RIDOT, Regulations, Section III, Definitions, No. 24 ("on-premise advertising sign").

The Court of Appeals for the First Circuit has already noted the significance of this wording, in a case which will be discussed at length in this memorandum. "Ackerley accurately points out that the descriptive terms 'off-premise' and 'on-premise' can be misleading when used to modify the word 'sign', since the applicable category is determined not by a sign's *location*, but by its *message*. As noted *supra*, at note 1, a sign attached to a building can carry either off-premise or on-premises messages." Ackerley Communications v. City of Cambridge, 88 F.3d 33, 34, n.3 (1st Cir. 1996) (italics in original). The court noted that it used the terms on-premise and off-premise interchangeably with on-site and off-site. Id, at 34, n.1.

RIDOT suggested to plaintiff, in August of 2005, that the sign could become a permissible "on-site" sign if Vono agreed to display only certain messages in the future, without any other change in location, size, design, or any other aspect of the sign. This confirms that RIDOT's use of the "on-site" language comes squarely within the First Circuit's analysis in Ackerley, 88 F.3d at 34, n.3.

## IV. Legal Arguments

### A. The State Statute and Regulations are Content-Based and Therefore Contravene the First Amendment

The first, and perhaps primary, claim raised by plaintiff is that the State must engage in a content-based analysis of a message in order to determine if a sign is on-premise or off-premise. This analysis need not turn on whether the state is expressing hostility toward, or trying to suppress, certain messages. That is not the test for a content-based challenged, as it is emphatically not a subjective analysis.

Although there has been considerable litigation and scholarly debate in recent decades over this subject of billboard regulation, the answer to the question currently before this Court is rather easily resolved based on a trio of First Circuit decisions.[3]

In John Donnelly & Sons v. Campbell, 659 F.2d 6 (1st Cir. 1980), the dispute arose over a challenge by billboard companies to a Maine statute whose general goal was the elimination of billboards. Much of the court's opinion reveals great respect for the legitimate interests asserted by the state, in aesthetics, safety, and tourism. "The cases are almost uniform that there is a strong governmental interest in preserving the beauties of the landscape." Donnelly, at 12.

Safety is also a legitimate governmental concern, since driver distraction is a serious problem. Id, at 10. However, the court reasoned that there was a lack of connection between the safety concern and some of Maine's content restrictions. In fact, an interesting irony was observed by the court:

> Finally, and significantly, on-premise signs seem far greater traffic hazards than signs conveying information for future use. One need hardly ask which is more likely to disturb the traffic pattern, a sign that advertises that some product or service is available ahead, or one that cause the passenger or driver to exclaim that the spot is just being passed.
> -Donnelly, at 11

The Court of Appeals, although supporting much of the legislative goal, invalidated the Maine statute because of its impact on non-commercial speech, which is frequently of a "political, social, cultural, and religious import-speech long

---

[3] John Donnelly & Sons v. Campbell, 639 F.2d 6 (1st Cir. 1980); Ackerley v. Somerville, 878 F.2d 513 (1st Cir. 1989); Ackerley v. Cambridge, 88 F.3d 33 (1st Cir. 1996). ("Ackerley II"). A subsequent opinion of the First Circuit dealt with the proper scope of the remedy in the Cambridge litigation, Ackerley v. Cambridge, 135 F.3d 210 (1st Cir. 1998) ("Ackerley III", invalidating the Cambridge ordinance in its entirety).

afforded maximum protection under the First Amendment." Id, at 15. Such speech is inherently off-premise, and the statutory scheme involved analysis of whether a sign related to an on-premise activity. Thus, the content was critical.

Judge Pettine, sitting on the Circuit by designation, wrote a concurring opinion in Donnelly, at 16-25, emphasizing even more strenuously the content-based nature of the statutory scheme, as well as his view that Maine could not save the statute by applying it only to commercial speech. Id, at 24.

Next, in Ackerley v. City of Somerville, 878 F.2d 513 (1st Cir. 1989), the court reviewed a municipal ordinance that contained a "grandfather" provision for billboards, even though nonconforming, if they met certain conditions. "In other words, all signs that carried non-commercial messages, whether onsite or offsite, and signs that displayed *on-site* commercial messages could continue in use, regardless of their size and location." Ackerley I, at 514 (italics in original).

Although not stating its analysis in the Somerville case in terms of a content-based defect, the court invalidated the ordinance because it prohibited future speech based on whether signs had carried certain messages (noncommercial and on-site commercial) exclusively in the year before the adoption of the ordinance. Ackerley I, at 518. Thus the ordinance limited future billboard use to certain "speakers", those who had not used their billboards in the past for "lawful but less favored speech." Id, at 518.

The disfavored type of past speech in Ackerley I was off-site commercial speech, expression that cannot be thus classified by the government without analyzing the subject or nature of the message.

The First Circuit reviewed in a footnote a number of decisions from other circuits. Id, at 522, n. 16. While distinguishing certain cases, our Circuit also stated that "to the extent any of these cases suggests that a city explicitly may favor commercial on-site messages over noncommercial messages, we disagree." Id.

The third, and most dispositive, of the First Circuit cases is Ackerley v. City of Cambridge, 88 F.3d 33 (1st Cir. 1996). The ordinance at issue distinguished between on-site and off-site messages on billboards and have applied this distinction to noncommercial speech as well as commercial. Id, at 36-37.

The court of appeals did not decide whether strict scrutiny was required because the ordinance failed the First Amendment in any event. Id, at 37. However, the Court did point out that "in commonsense terms, the distinction surely is content-based because determining whether a sign may stay up or must come down requires consideration of the message it carries." Id, at 36, n. 7.

The Cambridge ordinance also suffered the same constitutional defect in its grandfathering provision as did the Somerville ordinance in Ackerley I. 88 F.3d at 38-39. Later, as the Cambridge litigation continued, the First Circuit reiterated its holding and explained that the city's ordinance had to be invalidated in its entirety. Ackerley v. Cambridge, 135 F.3d 210 (1st Cir. 1998) ("Ackerley III").

In reaching its conclusions the First Circuit wrote against the backdrop of two principal Supreme Court cases. Metromedia Inc. v. City of San Diego, 453 U.S. 490, 101 S. Ct. 2882, 69 L. Ed. 2d 800 (1981); City of Cincinnati v. Discovery Network, 507 U.S. 410, 113 S. Ct. 1505, 123 L.Ed 2d 99 (1993). Much has been written about the interpretation and interplay of these two cases. See "Scylla or

Charybdis: Navigating the Jurisprudence of Visual Clutter," 103 Michigan Law Review 1877 (2005); "Ninth Circuit Upholds Oregon Sign Regulation That Distinguishes Among Signs Based on Their 'Onsite' or 'Offsite Nature", 117 Harvard Law Review 2753 (2004) (criticizing Ninth Circuit decision in Lombardo v. Warner, 353 F.3d 774 (9th Cir. 2003) and pointing to the First Circuit, among others, for the correct analysis. 117 Harvard Law Review at 2757, n. 42, citing Ackerley, supra, 88 F.3d 33).

Metromedia had no majority opinion, leading to confusion and some criticism. See Michigan Law Review, supra, at 1879. But it did invalidate San Diego's ordinance because its narrow list of exemptions list for billboards favored some commercial over noncommercial speech.

In Discovery Network, the Supreme Court invalidated an ordinance that banned only news racks containing commercial handbills. Six Justices agreed to strike the ordinance and observed that it "seriously underestimate[d] the value of commercial speech." 507 U.S. at 419. As ably articulated in the Michigan Law Review analysis, the on-site off-site distinction is violative of the combined impact of Metromedia and Discovery Network. 103 Michigan Law Review at 1885-6.

The Supreme Court in Metromedia made note of the "onsite-offsite" issue in the federal highway act, 23 U.S.C. § 131(c) but did not decide its constitutionality since it was a San Diego ordinance that was before the Court. A similar situation is present in this case, despite the defendant's efforts to join his fate to that of USDOT. See Metromedia, 101 S. Ct. at 2896, n. 20.

**B. The State Statute and Regulation Disadvantage Non-Commercial Speech**

The on-site-off-site distinction also contravenes the First Amendment because it disfavors non-commercial speech, including speech which is considered at the apex of protection under the Bill of Rights. See 117 Harvard Law Review, at 2757, discussing how the "site" language discriminates against noncommercial speech in practice, a point also noted by the First Circuit in Ackerley II, 88 F.3d 33, 36-37, n. 7. See also Rappa v. New Castle County, 18 F.3d 1043, 1056, n. 19 (3rd Cir. 1994).

Much of the caselaw discussed in Part IV A of this memorandum applies to this basic constitutional defect as well and need not be repeated. A few examples are in order, however. Defendant's August 2005 invitation to plaintiff would permit future messages relating to activity going on in the actual premises, which is in a commercial and industrial site. Plaintiff could no longer post a billboard for a political candidate or an election, nor for a non-profit agency such as Casey Family Services, which is clearly off-site.

Plaintiff could not accept a billboard expressing a view on the Iraq war, pro or con, nor on any other issue of public importance. The Iraq war is not "on-site" at any Rhode Island billboard location since it is not a "business or businesses conducted on the property [the principal activity]." RIDOT Regulations, III (24).

Even a political candidate's billboard could only satisfy the on-site requirement if it were located perhaps at the campaign headquarters of that candidate.

Nearly all political, religious, or non-commercial speech is off-premises under the statutory and regulatory scheme currently in force in Rhode Island.

**C. <u>The Defendant has Unbridled Discretion</u>**

One of the many problems that can occur, and have occurred, when the content of a sign must be analyzed to determine its legality is the exercise of discretion by the government.

Clearly the "Carcieri for Governor" sign, previously displayed by plaintiff, should have been considered "off-premise", unless one takes the metaphysical position that the candidate is running for office everywhere throughout the jurisdiction. Differing interpretations could be used, over what is or is not related to the business on the premises. Could a Women's Health Center put up a message on its own rooftop about an upcoming referendum on an abortion issue? Could a manufacturing plant post a sign about a controversial free-trade policy? Will RIDOT have a roving ombudsman determining whether the message sufficiently relates to the business on premises?

Further discussion of the extreme constitutional difficulties in this area is contained in Section F of this argument, <u>infra</u>.

**D. <u>The Defendant's Regulatory Scheme Contravenes Due Process</u>**

Flowing from the problems set forth in parts A, B, and C, <u>supra</u>, there is the additional problem that plaintiff was simply decreed to have a public nuisance, with no charge, and no hearing. Sentence was passed and plaintiff was thanked for his anticipated cooperation. See Amended Complaint, paragraphs 36-39.

Even under the existing RIDOT Rules, an alleged offender could seek to establish a factual defense based on (a) the on-site/off-site factual distinction, (b) the commercial or industrial zoning exemption, or (c) the grandfathering provisions. RIDOT does not provide notice that any procedural mechanism for any objections or defenses is available. The amended rules and Regulations provide an appeal process for the denial of a permit, Section XIII (D). However, that Section would not apply to the situation confronting the plaintiff.

The state's procedural mechanisms must allow someone such as plaintiff to at least have the opportunity to plead that his message is in fact "on-site" even under RIDOT's theory, or is exempt because of its location, or is grandfathered, or is protected by the constitutional principles set forth in the First Circuit decisions, or under Metromedia, supra, Discovery Network, supra, or such recent precedents as Maldonado v. Kempton, 422 F. Supp. 2d 1169 (N.D. Cal. 2006) (invalidating California billboard statute due to its favoring commercial over non-commercial speech), or Outdoor Media Dimensions v. DOT, 132 P. 3d 5 (Supreme Court Oregon 2006) (state law distinguishing on-premise sign from off-premise sign, for fee purposes, violated state's free expression guarantees).

**E. The Grandfathering Provision Violates the First Amendment**

In Rhode Island a non-conforming sign may be grandfathered, but its protected status could be lost subsequently, based upon its message. See Regulations, Section VIII (B)(1). If the message becomes "obsolete" or if it "does not identify a particular product, service or facility that is currently available to the motorist," it loses its protected status. (emphasis added). Not only do these

provisions disfavor non-commercial speech, but they would involve the state in absurd exercises. Who would determine what communications are now obsolete? Who will explain why the sign that says "Coming Soon – Joe's Diner" caused the billboard to lose its grandfathered status.

Just as in Donnelly, and Ackerley I, supra, the constitutional defects with the grandfathering provisions are patent.

**F. Rule IX of the RIDOT Regulations Contravenes the First Amendment**

In issuing amended regulations while this case was pending, defendant not only passed up an opportunity to address the on-premise off-premise problem, but defendant added an even more egregiously unconstitutional abridgement of free speech.

The Rules and Regulations, Section IX (3), state that "signs advertising activities that are illegal under State, Federal, or Local Laws, or State Regulations in effect at the location of such signs are prohibited." Plaintiff challenges this provision as a prior restraint and chilling of his free speech rights, and he has standing even without it yet being applied to him.

Defendant apparently does not believe that Brandenburg v. Ohio, 395 U.S. 444 (1969), applies within Rhode Island. In that case the Supreme Court resoundingly declared that:

> "[t]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Id.

RIDOT Rule IX (3), however, would give plaintiff great pause before agreeing to a billboard promoting gay marriage, since its legality is currently a matter of great uncertainty in Rhode Island. Perhaps he would decide to change the message to promote gay marriage "just a few miles north in Attleboro, Massachusetts!" But, alas, he could still run afoul of the Rule, since gay marriage may be illegal on Poe Street in Providence.

Then again, even if gay marriage became lawful in Rhode Island, plaintiff would be right back in the grip of the on-site off-site problem. Performance of gay weddings would have to become the principal activity at his building on Poe Street in order to decide whether his billboard is protected speech or a public nuisance.

Another example reveals the quagmire into which RIDOT officials would sink. Could a medical facility in Rhode Island display a medical marijuana sign now that it is approved as lawful by the Rhode Island General Assembly? Assuming for the moment that the doctors cleared the on-premise hurdle, they might venture to think they are safely within the First Amendment. But the RIDOT billboard judges will now have to debate whether something perfectly legal under Rhode Island law (medical marijuana) but unlawful under federal law, is proscribed by Rule IX (3).

In short, there is much the state can legitimately regulate in this area. To name a few objective and non-content items, there is distance from roadway, dimensions of sign, density of signs, lighting features, and mechanical or movement aspects of signs that are unrelated to the message but may be very related to the state's valid interests of safety, aesthetics, and tourism.

## CONCLUSION

For all of the above reasons, plaintiff asks this Court to grant the relief requested on pages 13-14 of the Amended and Supplemental Complaint and issue declaratory and injunctive relief invalidating the enumerated sections of the state statute and regulations.

Respectfully submitted,
Plaintiff
Anthony Joseph Vono
By his Attorney:

/s/John W. Dineen_____
John W. Dineen #2346
305 South Main Street
Providence, RI 02903
Tel. 401-223-2397
Fax 401-223-2399

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2007, I forwarded the above document by electronic mail to: **Rebecca T. Partington, Esq., rpartington@riag.ri.gov , and Michael Field, Esq., mfield@riag.ri.gov , Department of the Attorney General,** and also sent by U.S. mail on the same day to**; John Igliozzi, Esq., R.I. Department of Transportation, Two Capitol Hill, Providence, RI 02908.**

/s/ John W. Dineen_____
John W. Dineen