**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Anthony Joseph Vono**<br>**d/b/a Specialty Promotions,**<br>**Plaintiff** | :<br>:<br>:<br>: | |
| **v.** | : | **C A. No. 05-485 S** |
| **James R. Capaldi, Individually and in his official capacity as Director, State of Rhode Island Department of Transportation,**<br>**Defendant** | :<br>:<br>:<br>:<br>:<br>: | |

**DEFENDANT'S OBJECTION TO PLANTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Defendant and hereby objects to Plaintiff's Motion for Summary Judgment. A memorandum in support is attached hereto.

Respectfully submitted,

PATRICK C. LYNCH
ATTORNEY GENERAL
By his attorney,

*/s/ Rebecca Tedford Partington*
*/s/ Michael W. Field*

Rebecca Tedford Partington (#3890)
Assistant Attorney General
Michael W. Field (#5809)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Extension 2303
rpartington@riag.ri.gov
mfield@riag.ri.gov

CERTIFICATION

I, the undersigned, hereby certify that I caused a copy of the within Objection to be filed with the United States District Court ECF system and that it is available for viewing and downloading. In addition a copy has been electronically sent via the ECF system on this 26th day of September 2007 to:

John W. Dineen, Esq.
jwdineen1@yahoo.com

*/s/ Rebecca Tedford Partington*

_______________________________

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Anthony Joseph Vono d/b/a Specialty Promotions, Plaintiff** | : | |
| **v.** | : | **C A. No. 05-485 S** |
| **James R. Capaldi, Individually and in his official capacity as Director, State of Rhode Island Department of Transportation, Defendant** | : | |

**DEFENDANT'S RESPONSE TO PLANTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Memorandum, in large part, asks this Court to engage in an academic review of the advertising regulations, posing purely hypothetical situations for the Court's consideration. The Court should decline the invitation, and hold that the Plaintiff lacks standing, as argued in the State's initial memo. Vono sells advertising space and is not engaged in protected activity. Simply put, there is no constitutional right to sell advertising space.

If the Court reaches the constitutional arguments, it is clear that applicable case law supports the on-premise/off-premise distinction. In applying the case law, the Court should consider only the facts of this case, and not the numerous hypothetical scenarios offered by the Plaintiff.

The First Amendment Is Not Violated

The Supreme Court has recognized that the first amendment does not guarantee the right to communicate one's views at all times and places or in any manner. Heffron v. International Soc'y for Krishna Consciousness, Inc. , 452 U.S. 640 (1981). Expression, whether oral or written, is subject to reasonable time, place, and manner restrictions. Clark v. Community For Creative Non-Violence, 468 U.S. 288 (1984). Such restrictions are valid provided that they are

justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a substantial governmental interest, and they leave open ample alternative channels for communicat8ion of the information. Id.

Plaintiff's constitutional attack is based on a trinity of decisions from the First Circuit: John Donnelly & Sons v. Campbell, 659 F.2d 6 (1st Cir. 1980); Ackerly v. City of Somerville, 878 F.2d 513 (1st Cir. 1989)("Ackerly I"); and Ackerly v. City of Cambridge, 88 F.3d 33 (1st Cir. 1996)("Ackerly II"). These cases are distinguishable, and, coupled with Plaintiff's silence on the standing issue, the constitutional challenge here must fail.

Citing Donnelly in support of Plaintiff's argument is like comparing apples to zucchini. A close reading of Donnelly actually supports the State in this action. First and foremost, Donnelly was decided prior to Metromedia v. City of San Diego, 453 U.S. 490 (1981), and it is of little value in light of the Supreme Court's decision in that case. ***See***, National Advertising Co. v. Village of Downer's Grove, 561 N.E. 2d 1300, 1310 (App. Ct. Ill. 1990). Donnelly was a ban on ***all*** billboards in the State of Maine, with some exceptions. It was not a challenge to a regulation of on-premise versus off-premise advertising. The First Circuit correctly articulated that "[t]he question, therefore, is not whether there is a substantial connection between the restriction and the interest intended to be protected, but only whether the interest is one entitled to protection, and whether it is strong enough to justify the act's restriction on speech." 639 F.2d at 11-12. In answering that question, the Circuit noted that "[t]he cases are almost uniform that there is a strong governmental interest in preserving the beauties of the landscape." Id. at 12 (citations omitted). The Court did not stop there, but chose to recognize also the important state

interests in "aesthetics and tourism." Id. The following passage actually bolsters the State's argument herein:

> Nor are we moved by the suggestion that it diminishes the state's aesthetic position to allow on-premise signs while imposing greater restrictions on others. Apart from the necessity of making some commercial allowances, on-premise signs are the least aesthetically offensive. The advertised structure, whether flea market, gas station, or restaurant, has already violated the landscape, and the act so limits permissible on-premise signs as to ensure that any further damage will be negligible. From the point of view of aesthetics there is no unfair discrimination in disfavoring off-premise as against on-premise signs.

Id. at 13 (citations and footnotes omitted).

The First Circuit continued, stating:

> …in spite of all this, …for some persons the statute's curtailments may effect a noticeable diminution of opportunities. It is also to be observed, however, that not only is commercial speech not entitled to full First Amendment protections, but deprivation of highway opportunities is not as legally objectionable as some other curtailments. The use of land adjoining the highway for commercial advertising is really the use of the highway itself. Highways are 'created for a quite different purpose by the expenditure of public money…." As such they are to be distinguished from parks or other facilities created for general use, and weight should be given to the state's right to restrict the state-created incidental benefits. In sum, we believe the general tenor of the statute, so far as commercial advertising is concerned, is sufficiently supported by the public good.

Id. at 14 (citations omitted).

The Court's quarrel with the statute involved the restriction on what was called "OBDS" or "official business directional signs", which were not content neutral, and which are not implicated here. Further, the Court's invalidation of the statute rested largely on the examination of evidence presented relative to the impact of the total ban on "ideological" as opposed to commercial speech, but cautioned that they were not suggesting "opening the door wide." Id. at 10. To accept the Plaintiff's arguments in this case would fling that door wide open, and does not properly present any issue that was of concern in Donnelly.

Neither Ackerly I nor Ackerly II provide any support for Plaintiff's sweeping assertions of unconstitutionality. Ackerly I involved a provision different from that under review in the case sub judice, which was declared unconstitutional because of a grandfather clause that used as a yardstick past speech. As the First Circuit put it:

> The constitutional defect in Article 10 is in its grandfather provision, which exempts certain nonconforming billboards from complying with its size, height and location restrictions. Ackerly I, 878 F.2d at 516.

However, in striking down the ordinance in Ackerly I, the First Circuit noted that the First Amendment does not prohibit the distinction between on-site and off-site signs as urged by the Plaintiff. In referring to Metromedia, supra, the First Circuit recognized that there was no First Amendment problem in distinguishing between on-site and off-site commercial speech. 878 F.2d at 517. The First Circuit invalidated the grandfather provision at issue in Ackerly I because it imposed an impermissible penalty on fully-protected speech (based on past speech) and the town had failed to offer a rational basis for imposing the burden on the exercise of First Amendment rights. Id. at 522.

Ackerly II, while striking down an ordinance with certain similar characteristics to the regulations at issue here, nonetheless held that "perhaps if a total ban of signs were at issue, signs identifying buildings would be a permissible limited exception because, like traffic and safety signs, they would serve a substantial need that could not be met in any other way." 88 F.3d at 38. The ordinance in Ackerly II, failed because it was not a total ban on off-premises signs but only restrictions on size, style and location. Id. It was further held to be unconstitutional because it sought to protect ideological speech. Id. This created constitutional infirmities because the city was choosing which speakers might in the future display off-site, non-commercial messages on non-conforming signs. The vehicle used to determine which signs

could be erected was past speech. That is not the case here and Ackerly II is easily distinguishable.

After a review of the opinions cited by the Plaintiff, this Court should reject his tortured arguments. To the contrary, the State offers a substantial number of decisions from throughout the country that are identical to the dispute faced herein. The latter line of cases routinely hold that the restriction on all but on-premise advertising is well within the police power of a state, is founded on a substantial governmental interest, is content neutral and is permissible.

The general principle is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others. Members of the City Council of the City of Los Angeles v. Taxpayers For Vincent, 466 U.S. 789 (1994). As held in Vincent, that general rule does not apply to invalidate the regulations at issue in this case. As in Vincent, there is not even a "hint of bias or censorship" in the enactment or enforcement of the instant regulations. There is no claim that the regulations were designed to suppress certain ideas the State finds distasteful or that it has been applied to the challengers because of the views expressed. The text of the regulation is neutral and indeed it is silent concerning any speaker's point of view. Id. at 804. In reaching that conclusion, the government in Vincent relied upon the tried and true test of United States v. O'Brien, 391 U.S. 367 (1968), setting forth the appropriate framework for reviewing a viewpoint neutral regulation: "[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is related to the suppression of free expression; and if the incident or restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 466 U.S. at 805 (citation omitted).

As in Vincent, the incidental restriction on expression which results from the regulation's attempt to accomplish such a purpose (eliminating visual clutter) is considered justified as a reasonable regulation of the time, place, or manner of expression if it is narrowly tailored to serve that interest. Id. at 808 (citations omitted). As the United States Supreme Court wrote earlier in Metromedia, "it is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm'" Id. (citation omitted). As the United States Supreme Court determined in Vincent, the substantive evil – visual blight – is not merely a possible byproduct of the activity, but is created by the medium of expression itself. Since the regulation curtails no more speech than is necessary to accomplish its purpose it was focused and permissible. Id. at 810.

To be subject matter neutral, a regulation must not be based on the speech's topic. For example, in Carey v. Brown, 447 U.S. 455 (1980), the Supreme Court held unconstitutional an ordinance prohibiting all picketing in residential neighborhoods unless it was labor picketing connected to a place of employment. The Court explained that, though not restricting which view about labor may be expressed, the ordinance prohibited all speech except speech about the subject of labor. Thus, the regulation was content based and impermissible. 447 U.S. at 468.

The principle inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of the disagreement with the message it conveys. The government's purpose is the controlling consideration." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

A regulation that serves purposes unrelated to the content of expression is deemed

neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech. Id. (citations omitted).

Numerous courts have upheld the on-premise versus off-premise distinction. See, Messer v. City of Douglasville, Georgia, 975 F.2d 1505 (11th Cir. 1992); Wheeler v. Commissioner of Highways, Commonwealth of Kentucky, 822 F.2d 586 (6th Cir. 1987); Advantage Media, LLC v. City of Eden Prairie, 456 F.3d 793 (8th Cir. 2006); Burns v. Barrett, 561 A.2d 1378 (Conn. 1989); Naegele Outdoor Advertising, Inc. v. City of Durham, 844 F.2d 172 (4th Cir. 1988); Ghaster Properties, Inc. v. Preston, 200 N.E. 2d 328 (Ohio 1964); Outdoor Systems, Inc. v. City of Lynexa, Kansas, 67 F.Supp.2d 1231 (D. Kan. 1999); R.O. Givens, Inc. v. Town of Nags Head, 294 S.E. 2d 388 (N.C. 1982); Suffolk Outdoor Advertising Company v. Holtz, 373 N.E. 2d 263 (N.Y. 1977); National Advertising Company v. City and County of Denver, 912 F.2d 405 (10th Cir. 1990); Maurice Callahan & Sons, Inc. v. Outdoor Advertising Board, 427 N.E. 2d 25 (Mass. App. 1981); Donnelly Advertising Corp. of Maryland v. City of Baltimore, 370 A.2d 1127 (Md. 1977); Infinity Outdoor, Inc. v. City of New York, 165 F.Supp. 2d 403 (E.D.N.Y. 2001); Wheeler v. Commissioner of Highways, North of Kentucky, 822 F.2d 586 (6th Cir. 1987); Texas Department of Transportation v. Barber, 111 S.W. 3d 86 (Tex. 2003); Rzadkowolski v. Village of Lake Orion, 845 F.2d 653 (6th Cir. 1988); Lombardo v. Warner, 353 F.3d 774 (9th Cir. 2003).

The lesson learned from this line of cases is that there is an analytical framework for determining whether these regulations infringe upon Vono's First Amendment rights. The traditional analysis applies here. First, inquire whether the act is content based or content neutral and then based upon the answer to that question, to apply the proper level of scrutiny. See e.g. Barber, 111 S.W. 3d at 98.

If the restrictions are determined to be content neutral, court should decide whether they are narrowly tailored to serve a substantial state interest. Esthetics and public safety on the highway are recognized as substantial governmental goals. Vincent, supra; Metromedia, supra; Burns v. Barrett, supra. Vincent teaches that Rhode Island's restriction is narrowly tailored because it "responds precisely to the substantive problem which legitimately concerns the [state. It] curtails no more speech than necessary to accomplish its purpose." Vincent, 466 U.S. at 810.

At this juncture the issue is whether the regulation leaves the Plaintiff with adequate alternative avenues for communication. This is where the standing problem becomes most acute. Since it is not Vono's speech that is being affected, it is difficult to apply this standard. However, it is clear that Vono's ability to advertise his own business is not affected in the least and therefore this prong weighs in the State's favor.

## CONCLUSION

A constitutional challenger shoulders a heavy burden. This Plaintiff has failed to prove a constitutional violation, and the State requests that judgment enter in its favor.

Respectfully submitted,

PATRICK C. LYNCH
ATTORNEY GENERAL
By his attorney,

*/s/ Rebecca Tedford Partington*
*/s/ Michael W. Field*

Rebecca Tedford Partington (#3890)
Assistant Attorney General
Michael W. Field (#5809)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Extension 2303
rpartington@riag.ri.gov
mfield@riag.ri.gov

CERTIFICATION

I, the undersigned, hereby certify that I caused a copy of the within Memorandum to be filed with the United States District Court ECF system and that it is available for viewing and downloading. In addition a copy has been electronically sent via the ECF system on this 26th day of September 2007 to:

John W. Dineen, Esq.
jwdineen1@yahoo.com

*/s/ Rebecca Tedford Partington*